**Greg HERRICK, Plaintiff–Appellant,**

v.

**Jane GARVEY, Administrator, Federal Aviation Administration, Defendant–Appellee.**

The Fairchild Corporation,
Amicus Curiae.

No. 01–8011.

United States Court of Appeals,
Tenth Circuit.

July 24, 2002.

Michael J. Pangia (Joseph F. Moore, Jr., Moore & Myers, Jackson, WY, with him on the briefs), Washington, DC, for Plaintiff–Appellant.

David Kubichek, Assistant United States Attorney (John R. Green, Interim United States Attorney, Nicholas Vassallo, Assistant United States Attorney, Cheyenne,

WY, on the brief), Casper, WY, for Defendant–Appellee.

Emily M. Yinger and N. Thomas Connally, Hogan & Hartson L.L.P., McLean, VA, filed an amicus brief on behalf of The Fairchild Corporation in support of Defendant–Appellee.

Before SEYMOUR, Circuit Judge, BRORBY, Senior Circuit Judge, and LUCERO, Circuit Judge.

LUCERO, Circuit Judge.

This suit under the Freedom of Information Act ("FOIA") requires us to determine the proper application of the "trade secret" exemption to FOIA's general requirement that the federal government release information to the public. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

**I**

Greg Herrick, the plaintiff and appellant in this case, sought information from the Federal Aviation Administration ("FAA") regarding a 1936 antique F–45 aircraft manufactured by Fairchild Engine and Airplane Corporation ("Fairchild"). In November 1997 Herrick sent a FOIA request to the FAA for plans and specifications submitted by Fairchild in 1935 to the Civil Aeronautics Agency ("CAA"), the predecessor to the FAA. Herrick has stated that he desires this information for the purpose of restoring the F–45 that he owns.

Fairchild had submitted these materials to the CAA in order to receive an "Approved Type Certificate." Obtaining such a certificate is a requirement for the con-

struction, sale, and use of a new type of aircraft in the United States. After the agency has reviewed the documents related to the aircraft design, conducted (or required the manufacturer to conduct) tests, and determined that the aircraft is airworthy, the agency grants a type certificate that gives the manufacturer the legal right to produce the new type of aircraft. *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 804–07, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). Thus, the materials that Herrick seeks include detailed plans and specifications for the construction of the F–45. Although the CAA granted Fairchild a type certificate to produce the F–45, only sixteen were ever built.

Herrick made the November 1997 request in a letter to the FAA, to which the FAA replied in December that it would be unable to release the materials because they were exempt from FOIA as "trade secrets" pursuant to 5 U.S.C. § 552(b)(4). Instead, the FAA instructed Herrick to contact the owner of the materials—listed in its records as Fairchild Industries, Inc., based in Maryland—to obtain permission for their release. Herrick attempted to contact Fairchild Industries but determined that the company had since been merged and then sold to a new corporation, The Fairchild Corporation.[1] In January 1998 Herrick appealed the FAA's adverse determination, stating that counsel at The Fairchild Corporation had told him that all Fairchild aircraft archive memorabilia had been donated to the Smithsonian Institute in Washington, D.C.[2] In response, the FAA stated in October 1998 that they

---

1. Throughout this opinion, "Fairchild" is used to refer to the corporation (Fairchild Engine and Airplane Corporation) that produced the aircraft in the 1930s, submitted the type certificate, and, as discussed below, granted permission in 1955 for the documents to be loaned to the public. "The Fairchild

Corporation" refers to the currently existing corporation that claims proprietary rights to the trade secret in question.

2. Later investigation by the FAA determined that the Smithsonian was not in possession of the relevant type certificate materials.

had contacted counsel at The Fairchild Corporation, that counsel still objected to the release of the type certificate materials, and that therefore the "trade secrets" exemption of FOIA continued to apply. The FAA also notified Herrick that this was a final administrative decision and that he had a right to file suit in federal court to appeal the decision.

Herrick filed suit in district court, arguing that the FAA had improperly applied the "trade secrets" exemption to the materials in question and that the FAA therefore had a legal duty under FOIA to release the materials. Following discovery, the parties filed cross-motions for summary judgment. The district court granted the FAA summary judgment, holding that the "trade secrets" exemption applied to the materials. Herrick appeals.

## II

We begin with an overview of FOIA and the relevant principles of statutory interpretation. We then examine whether the documents in question qualify as "trade secrets" under FOIA.

### A

FOIA, enacted in 1966, provides the public with a right of access to federal agency records, a right of access that is subject to nine exemptions. *See* 5 U.S.C. § 552. Agencies are required to make all records accessible to the public upon request. § 552(a)(3). Deadlines are set for the time within which the agency must respond to record requests, § 552(a)(6), and fees may be charged for reasonable copying and search costs, § 552(a)(4)(A). Federal courts are granted the authority to enjoin the agency from withholding records. § 552(a)(4)(B). However, agencies need not release records that fall within the nine specified exemptions listed in 5 U.S.C. § 552(b); these exemptions include classified documents, personnel records, exemptions under other statutes, trade se-

crets and other confidential commercial information, and law enforcement records. § 552(b). For the purposes of this case, the only relevant exemption is "Exemption 4," which applies to "trade secrets and commercial or financial information obtained from a person and privileged or confidential." § 552(b)(4).

FOIA's purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 941 (10th Cir.1990) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 241, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978)). FOIA achieves this goal by "pierc[ing] the veil of administrative secrecy and ... open[ing] agency action to the light of public scrutiny." *Id.* (quotation omitted). FOIA is "to be broadly construed in favor of disclosure, and its exemptions are to be narrowly construed." *Id.* (citation omitted). If an agency has been sued by an individual because the agency has refused to release documents, the agency "bears the burden of justifying nondisclosure." *Id.*

In any FOIA action challenging an agency decision to withhold records, the district court reviews de novo the agency's decision not to disclose. *Id.* (citing *DeSalvo v. I.R.S.*, 861 F.2d 1217, 1221 (10th Cir.1988)). On appeal, the initial role of the court of appeals is to determine "whether the district court had an adequate factual basis upon which to base its decision." *Id.* at 942 (citing *King v. United States Dep't of Justice*, 830 F.2d 210, 225 (D.C.Cir.1987)).

We review the district court's grant of summary judgment de novo. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir.1999). Summary judgment

is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmovant. *Simms,* 165 F.3d at 1326. "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Id.* (quotation omitted).

 "If there is no genuine issue of material fact, we determine whether the district court correctly applied the substantive law." *Id.* In particular, when a district court has granted summary judgment in favor of a government agency in a FOIA suit, we "must review de novo the district court's legal conclusions that the requested materials are covered by the relevant FOIA exemption." *Anderson,* 907 F.2d at 942 (citing *Johnson v. United States Dep't of Justice,* 739 F.2d 1514, 1517 (10th Cir.1984)).

**B**

Grounding its decision to withhold the records on Exemption 4 of FOIA, the FAA determined that the records in question are "trade secrets" protected by that exemption. We have defined a "trade secret" for the purposes of FOIA as "a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort." *Id.* at 944 (quoting *Pub. Citizen Health Research Group v. Food & Drug Admin.,* 704 F.2d 1280, 1288 (D.C.Cir.1983)). In developing this definition, we rejected the Restatement definition of "trade secret" for FOIA purposes in favor of the D.C. Circuit's narrower interpretation of the term. *Id.* at 943–44.

On appeal, Herrick raises three primary arguments. He argues first that the documents here no longer constitute a "trade secret" because to be a trade secret the documents must be owned by someone and the FAA has not shown that The Fairchild Corporation is the "owner" of the documents. Second, he argues that the "secret" status of the documents was lost when Fairchild granted the FAA permission to release the documents to the public in 1955. Finally, in response to the government's argument that the trade secret status of the documents was restored when Fairchild Corporation refused to release the documents to Herrick, Herrick argues that this current refusal did not restore the exempt status of the documents because, again, The Fairchild Corporation is not their owner.[3]

**C**

We first address Herrick's argument that the government must show "ownership" by a party for the trade secret exemption to apply. Herrick asserts that The Fairchild Corporation, the party currently claiming the documents are still subject to trade secret protection as to which it has proprietary rights, is not the owner of the documents. He therefore argues the documents cannot be a "trade secret" because the essence of a trade secret is "ownership" by some party and

---

**3.** Before the district court, Herrick argued that the documents were not commercially valuable. At oral argument, Herrick conceded this point. Herrick makes no argument that any of the other elements of the *Anderson* definition are not met.

the government has not shown that these documents are owned by The Fairchild Corporation or by anyone else. We need not address whether we should supplement the *Anderson* definition of trade secret to require a governmental showing that the documents in question are actually owned by the submitting entity or by any other party, because we conclude the district court properly found that The Fairchild Corporation does own these documents.

■ We first note that Herrick's argument that The Fairchild Corporation can only demonstrate ownership of the documents by showing a transfer of the type certificate in conformance with the FAA regulations is misplaced. Ownership of the *type certificate,* which grants permission to manufacture the aircraft in question, is not the issue. Rather, the issue is ownership of the *documents and materials submitted* as part of the application for that certificate. Thus, the FAA may show that The Fairchild Corporation owns the documents by showing a corporate "chain-of-ownership" of the documents from Fairchild, the original owner and submitter of the documents.

■ In the course of the instant case the FAA has provided a substantial amount of evidence as to the corporate succession from Fairchild in the 1950s to The Fairchild Corporation today, including documentation as to mergers, name changes, and reincorporation. The FAA need not show that, in each of these transactions, the ownership of these particular documents was specifically mentioned and transferred; such a requirement would be overly burdensome in these circumstances. Instead, the FAA need only show that there was a corporate successor that received the assets of the prior corporation, and the FAA has met that burden.

■ Herrick argues there is evidence that the documents in question might have been transferred to a different corporation in the past. In particular, Herrick cites a district court opinion in which the court made a finding of fact that in the 1980s Fairchild sold off its airplane manufacturing business to another corporation.[4] *See In re Fairchild Indus., Inc.,* 835 F.Supp. 603, 604–05 (N.D.Fla.1993). The inference is that because this subsidiary held Fairchild's aircraft manufacturing business, it was the owner of the documents at issue in this case and that when this subsidiary was sold, the ownership of the documents was also transferred. Thus, according to Herrick, there is at least a genuine issue as to the material fact of whether The Fairchild Corporation owns these documents.

■ The evidence Herrick relies upon is hearsay. It is an out-of-court written statement by a judge now offered to prove the truth of the matter asserted—in this case, that the Fairchild subsidiary held all of Fairchild's aircraft manufacturing business and was sold to another corporation. *See* Fed.R.Evid. 801(c). It is therefore inadmissible unless it falls within one of the hearsay exceptions.[5] Fed.

---

4. Herrick's other evidence—including an affidavit that provides hearsay evidence of a statement by an officer of The Fairchild Corporation in a shareholder meeting—is insufficient to meet his burden of avoiding summary judgment in favor of the government.

5. Our only other alternative for admitting this evidence would be for the district court or for us to take judicial notice of the opinion of the district court of the Northern District of Flori-

da. However, one of the requirements for judicial notice is that the evidence in question is "not subject to reasonable dispute." Fed. R.Evid. 201(b). Certainly the issue of whether the subsidiary was the only part of Fairchild involved in aircraft manufacturing and therefore whether it can be inferred that the subsidiary owned the documents is not one that is "not subject to reasonable dispute." Both parties dispute that question.

R.Evid. 802. Only one hearsay exception might possibly apply to this case—the exception for public records and reports.[6] Federal Rule of Evidence 803(8) allows for the admission of "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... factual findings resulting from an investigation made pursuant to authority granted by law."

▮ Rule 803(8) was not intended to allow the admission of findings of fact by courts. Rule 803(8) is limited to investigations: "A judge in a civil trial is not an investigator, rather a judge." *Nipper v. Snipes,* 7 F.3d 415, 417 (4th Cir.1993). The advisory committee notes to Rule 803(8) also indicate that the intent of the rule's drafters was to allow for the admission of investigations by officials in the executive branch; there is no indication in those notes that the committee intended this exception to include findings of fact by judges. *Id.; see also Jones,* 29 F.3d at 1554. In addition, the Federal Rules of Evidence specifically allow for the admission of certain kinds of judgments or their underlying facts as evidence, *see* Fed. R.Evid. 803(22) (previous conviction); R. 803(23) (personal, family, or general history and boundaries), which dissuades us from concluding that Rule 803(8) provides a blanket ground for the admission of prior judgments. A contrary conclusion by us would effectively eliminate the narrow nature of these hearsay exceptions and render them redundant.

Finally, policy reasons counsel against the admission of prior judgments or findings of fact under Rule 803(8). Juries are likely to give disproportionate weight to such findings of fact because of the imprimatur that has been stamped upon them by the judicial system. *Nipper,* 7 F.3d at 418. For example, findings of fact in a prior judgment could result because of default by an opposing party, stipulations between the parties, or a strategic choice by a party to not contest certain factual claims.

We thus join the Fourth and Eleventh Circuits in holding that the public records exception of Rule 803(8) does not apply to judicial findings of fact in a prior, unrelated case. *Jones,* 29 F.3d at 1554; *Nipper,* 7 F.3d at 417–18. *But see United States v. Garland,* 991 F.2d 328, 334–35 (6th Cir. 1993) (holding that findings of fact from a judgment by a court in Ghana are admissible under Rule 803(8) as investigatory reports and 18 U.S.C. § 3505 as foreign records).

Because Herrick's proffered evidence as to the ownership of the documents is inad-

---

**6.** The residual hearsay exception in Federal Rule of Evidence 807 does not apply in this case because there is no evidence that Herrick provided the government with notice of his intent to use the district court opinion "sufficiently in advance of the ... hearing to provide the [government] with a fair opportunity to prepare to meet it," including providing "prior notice of [his] intention to utilize [the residual] exception" to the prohibition on hearsay. *United States v. Zamora,* 784 F.2d 1025, 1031 (10th Cir.1986) (interpreting Federal Rule of Evidence 804(b)(5), a residual hearsay exception that was later incorporated into Federal Rule of Evidence 807). Moreover, Herrick has made no showing, and the district court made no finding, that the state-ment in question meets the requirements of Rule 807, including that the statement "is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts" and that the "general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." Fed.R.Evid. 807; *see also Zamora,* 784 F.2d at 1031 (requiring that an individual who submits evidence under Federal Rule of Evidence 804(b)(5) make a "showing as to the probative value of the [hearsay] statement [and] as to efforts made by [the individual] to obtain the information from other sources").

missible, the district court properly did not consider it in deciding the government's summary judgment motion. The district court correctly determined that the government showed that The Fairchild Corporation owns the materials.

**D**

Herrick points to a 1955 letter from Fairchild that "authorized [the CAA] to loan data from [its] files for use in making repairs or replacement parts for aircraft produced by Fairchild without requiring the individual to obtain specific requests from us." (1 Appellant's App. at 58.) According to Herrick, this removes the "secret" nature of the information in question such that the materials are no longer "trade secrets."

In response the government argues that only actual public disclosure of the documents would eliminate their "secret" nature. To support this position, the government cites case law for the proposition that "waiver" of FOIA exemptions only occurs when the plaintiff is able to show that specific documents have been released to the public. *See Pub. Citizen v. Dep't of State,* 11 F.3d 198, 201 (D.C.Cir.1993); *Davis v. United States Dep't of Justice,* 968 F.2d 1276, 1279 (D.C.Cir.1992); *Afshar v. Dep't of State,* 702 F.2d 1125, 1129–31 (D.C.Cir.1983).

 This response confuses two different issues. "Waiver" doctrine stands for the proposition that "the government cannot rely on an otherwise valid exemption [to FOIA] to justify withholding information that has been 'officially acknowledged' or is in the 'public domain.'" *Davis,* 968 F.2d at 1279 (citing *Afshar,* 702 F.2d at

1130–34). Herrick's argument is that the exemption claimed by the government is not valid in the first place—i.e., that the "trade secret" exemption does not apply because the material is not a "secret" because of Fairchild's prior grant of permission to the government to loan the materials. The cases cited by the government would only be applicable if Herrick had conceded that the materials were otherwise currently "trade secrets" but were in the public domain such that the FOIA exemption had been "waived." In other words, "waiver" of an exemption is a very different proposition from whether information falls within the scope of Exemption 4. *See Niagara Mohawk Power Corp. v. United States Dep't of Energy,* 169 F.3d 16, 19 (D.C.Cir.1999) (stating that the issue of whether "information is already in the public domain," i.e., waiver of an exemption, is a "proposition that if true would give victory [to plaintiff] independent" of whether Exemption 4 properly applies).

 The purpose of Exemption 4 is "to protect the confidentiality of information which is obtained by the Government ..., but which would customarily not be released to the public by the person from whom it was obtained." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n,* 975 F.2d 871, 877 (D.C.Cir.1992) (quotation omitted). When a submitter grants the government permission to loan or release specific information to the public, the submitter clearly indicates that he has no further intention to keep the information secret. It is therefore a reasonable inference that the submitter himself would be willing to release the information to the public if requested to do so.[7] Thus, once a submitter grants the government permis-

---

7. Indeed, Fairchild's 1955 letter indicates that the company would have been equally willing to release the information itself to any member of the public who requested it and that the purpose of the letter was instead to deflect

such requests to the government. (*See* 1 Appellant's App. at 58 (instructing the government that it can release the information to the public "without requiring the individual to obtain specific requests from us").)

sion to loan or release the information to the public, there is no reason for Exemption 4 to apply because the submitter no longer intends the information to be "secret." An examination of the plain meaning of the word "secret" leads to a similar conclusion. Most people would agree that if a person was given a piece of information and was told that the information could be revealed to anyone who asked about it, the information would not constitute a "secret." [8]

■ We therefore conclude that where the submitter or owner of documents held by the government grants the government permission to loan or release those documents to the public, those documents are no longer "secret" for purposes of Exemption 4. In such a situation, FOIA creates an obligation for the government to release the documents.[9] When Fairchild granted permission to the CAA to loan the documents to individuals who requested them, for purposes of FOIA the documents ceased to be "secret."

**E**

■ In rejecting Herrick's argument that the documents were no longer "trade secrets" because of the 1955 grant of permission, the district court concluded instead that "[t]he authorization of Fairchild to disclose, given in 1955, has since been reversed by the corporation" (2 Appellant's App. at 461), referring to The Fairchild Corporation's refusal to grant the FAA permission to release the materials to Herrick.[10]

8. Although Fairchild authorized the government to "loan" the materials to the public—rather than "release" them—this fact does not change the analysis. For example, if Fairchild had directly loaned the materials to members of the public itself, the information would have entered the public domain, notwithstanding the temporary nature of any "loan." During the course of the "loan" the borrower could have copied, disseminated, used, or otherwise appropriated the materials in a manner such that the secret nature of the materials would have been eliminated. In fact, Fairchild's grant of permission was intended to allow third parties to use the materials to make "repairs or replacement parts" (1 Appellant's App. at 58), such that the secret information in the materials was very likely to be either copied for future use or to be used to create replacement parts.

9. A contrary conclusion would lead to a curious outcome under FOIA. If a "trade secret" could remain "secret" even when the owner and submitter of the information indicated to the government that it could be released, the government could then continue to refuse to disclose the information under FOIA indefinitely—using Exemption 4 and the fact that the information had never been released to the public as its rationale—even though the submitter of the information no longer wished the information to remain secret.

10. We note that the district court's conclusion assumed the answer to two additional legal questions.

First, the district court assumed that—where documents that have lost their status as "trade secrets" under Exemption 4 because the owner of the information has granted permission for the documents to be released to the public—those documents may have their trade secret status restored through revocation of the grant of permission. On appeal Herrick has not challenged the legal conclusion that it might be possible for The Fairchild Corporation to revoke the permission to loan the documents to the public or that such a revocation would restore the secret nature of the documents. We therefore decline to overturn the district court's judgment on a point that the plaintiff has failed to challenge on appeal. *See Hernandez v. Starbuck*, 69 F.3d 1089, 1093 (10th Cir.1995). We assume, without deciding, that it was possible for the grant of permission to be revoked and the secret nature of the documents under FOIA to be restored.

Second, the refusal by The Fairchild Corporation to grant permission to release the documents to Herrick only occurred *after* Herrick had initiated his request for the type certificate materials. If a document's status under FOIA is determined at the time the document is requested, then The Fairchild Corporation could not have restored the status of the docu-

Herrick argues that The Fairchild Corporation's action could not have restored the exempt status of the materials because, again, The Fairchild Corporation is not the owner of the materials. Without ownership, according to Herrick, The Fairchild Corporation would have had no power to revoke the permission granted by Fairchild in the 1950s. We reject Herrick's argument because, as discussed above, the district court correctly determined that the government had shown that The Fairchild Corporation was the owner of the materials.

### III

We **AFFIRM** the judgment of the district court.

ments as a "trade secret" because its refusal occurred too late. On the other hand, if a document's status under FOIA is determined at the time the agency makes its final decision regarding the FOIA status of the documents, The Fairchild Corporation's refusal did not come too late, and it effectively revoked the permission to loan the documents to the public. Again, however, we need not answer the legal question of when the FOIA status of documents is determined because Herrick never raised the argument of timing in his brief on appeal, and we assume for the purposes of this case that The Fairchild Corporation timely revoked the previous grant of permission.·