**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 29 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROBERT CASAD, JR., PH.D,

       Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN
SERVICES,

       Defendant-Appellee.

No. 01-3368

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 00-CV-1340-MLB)**

---

Submitted on the briefs:

Robert C. Casad, Jr., Ph.D., Pro Se.

Robert D. McCallum, Jr., Assistant Attorney General; James E. Flory, United
States Attorney; Leonard Schaitman and Freddi Lipstein, Attorneys, Appellate
Staff, Civil Division, United States Department of Justice, Washington, D.C.;
Patricia Mantoan, Of Counsel, Office of General Counsel, Department of Health
and Human Services, for Defendant-Appellee.

---

Before **SEYMOUR** , **PORFILIO** , and **O'BRIEN** , Circuit Judges.

---

**SEYMOUR** , Circuit Judge.

Robert Casad, Jr. filed suit against the United States Department of Health and Human Services challenging the denial of his request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, for the complete "summary statement" associated with a grant application funded by the National Institutes of Health (NIH).[1] After determining that NIH properly withheld the requested information under FOIA's deliberative process privilege, the district court entered summary judgment in favor of defendant. We affirm.[2]

## I.

The summary statement sought by Mr. Casad was created during peer review of a training grant application submitted to the National Institute on Aging (NIA), one of the institutes within the NIH. Peer review plays an important role in the NIH's competitive grant application process. *See* 42 U.S.C. §§ 289a, 289a-1. A scientific review group, composed of experts qualified by training and

---

[1] The named defendant in this case is the United States Department of Health and Human Services (HHS). The NIH, dedicated to research and development activities in the area of public health and welfare, is an agency of the Public Health Service, 42 U.S.C. §§ 203, 281, which is in turn administered by the Secretary of Health and Human Services, § 241.

[2] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

experience in particular scientific or technical fields, evaluates the scientific and technical merit of grant applications. The group first decides whether the application is deemed worthy of funding under NIH selection criteria. If a majority of members of the group do not recommend the application for approval, then the application does not proceed through the funding process. *See* § 289a-1(a)(2). Approximately half the applications fall within the likely pool for making funding decisions. For these applications, the group assigns a numerical priority rating as a tool to permit applications to be funded in order of their priority.

A staff administrator then compiles a summary statement, which contains the scientific review group's recommendation, the priority score, and a summary of the factors considered on peer review. It also recounts the reviews of the individual peer reviewers, along with a summary of any group discussion. A copy of the summary statement is sent to the principal investigator of the proposed research so that the investigator may submit rebuttal comments.

For approved grant applications with direct costs exceeding $50,000, the summary statement is sent to the next stage of the review process–conducted by the advisory council for the appropriate institute. The purpose of this second level of review is to choose, from among meritorious projects, those most relevant to the nation's health needs. The advisory council, which includes both scientists

and lay community leaders, usually concurs with the peer review determination of merit. In making its recommendation, however, it also takes into account the broad background of research in universities and other institutions, the need to initiate research in new areas and the degree of relevance of the proposed project to the institute's mission. Without a favorable recommendation from the council, the grant cannot be funded. *See* § 284(b)(2)(B)(ii).

Upon completion of both levels of review, the Secretary of the Department of Health and Human Services, acting through the institute's director, makes the final decision on whether to fund the proposed project. §§ 284(b)(2), 288. The record shows that the director funds a proposal based on the availability of funds, "the proposed research training's relevance to NIA priorities and to the timeliness of the research training," as well as "the perceived scientific quality of the application as judged by initial peer review." Aplt. App. at 93. A successful applicant is given notice of a grant award and a general description of the funded project is made available to the public.

The grant at issue in this case was an NIA training grant awarded to researchers at the University of Michigan. Because the requested grant exceeded $50,000, peer review and also review by the National Advisory Council on Aging was required. The Council did not make a record of its deliberations on the application.

Mr. Casad made a FOIA request for the grant's entire documentary record. Although his request was eventually granted for the most part, portions of the summary statement were redacted. Sections containing evaluative comments and the scientific merit score were withheld, based on an administrative determination that the redacted information was protected from public disclosure by the deliberative process and privacy exemptions to FOIA's general requirement that the federal government release information to the public.

Mr. Casad brought suit in district court, arguing that the NIH had improperly invoked the exemptions and that the NIH had a legal duty under FOIA to release the complete summary statement. The parties filed cross-motions for summary judgment. The district court granted summary judgment in favor of defendant, holding that the deliberative process exemption applied. Mr. Casad appeals that ruling, and also attempts to appeal the district court's refusal to expedite his case under the priority of civil actions statute, 28 U.S.C. § 1657(a).

II.

FOIA "provides the public with a right of access to federal agency records." *Herrick v. Garvey,* No. 01-8011, 2002 WL 1648337, *2 (10th Cir. July 24, 2002). Its "purpose is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Id.* (quotations omitted). The

right of access, however, "is subject to nine exemptions. *See* 5 U.S.C. § 552." *Id.* "Congress created these exemptions because it 'realized that legitimate governmental and private interests could be harmed by release of certain types of information.'' *United States Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988) (quoting *FBI v. Abramson*, 456 U.S. 615, 621 (1982)).

"FOIA is to be broadly construed in favor of disclosure, and its exemptions are to be narrowly construed." *Herrick,* 2002 WL 1648337, at *2 (quotation omitted). "If an agency has been sued by an individual because the agency has refused to release documents, the agency bears the burden of justifying nondisclosure." *Id*. (quotation omitted).

"Federal courts are granted the authority to enjoin the agency from withholding records, § 552(a)(4)(B)," and to determine whether records fall within the statutory exemptions listed in 5 U.S.C. § 552(b). *Id.* "In any FOIA action challenging an agency decision to withhold records, the district court reviews de novo the agency's decision not to disclose." *Id*. On appeal, the initial inquiry is whether the district court had an adequate factual basis on which to base its decision. *Id.* Assuming this prerequisite is met, in a summary judgment case such as this one, we next "review de novo the district court's legal conclusions that the requested materials are covered by the relevant FOIA exemptions." *Hale v. United States Dep't of Justice*, 99 F.3d 1025, 1029

(10th Cir. 1996) (quotation omitted).  As in all summary judgment cases, we examine the record and reasonable inferences therefrom in the light most favorable to the nonmoving party.  *See id* .

### III.

The district court determined that the redacted material from the summary statement was properly withheld under FOIA's exemption five, which covers documents which a private litigant could not obtain from the agency through normal discovery rules.  *See Dep't of Interior v. Klamath Water Users Protective Ass'n* , 532 U.S. 1, 8 (2001).  [3]  One class of  memoranda shielded by exemption five includes "agency reports and working papers subject to the 'executive' privilege for predecisional deliberations."  *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill,*   443 U.S. 340, 353 (1979).

This deliberative process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those

---

[3]     Section 552(b)(5) provides that FOIA disclosure requirements do not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

who make them within the Government." *Klamath Water Users Protective Ass'n,* 532 U.S. at 8-9 (quotations and citations omitted).

Mr. Casad argues that there are two reasons why exemption five does not protect the withheld material from disclosure. First, he states that the summary statement is the final opinion of the NIA on the scientific merit of a grant application. Second, he states that a scientific review group is itself an agency within the meaning of FOIA and the summary statement constitutes the agency's opinion.

## A.

With regard to Mr. Casad's first argument, the essential question is whether the requested summary statement is "expressly subject to disclosure" as the final opinion "explaining the reasons" for a funding decision already made or, instead, a predecisional memorandum protected from disclosure under the deliberative process privilege. *Renegotiation Board v Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 170 (1975). Case law identifies two factors helpful in determining whether the privilege applies:

> the "nature of the decisionmaking authority vested in the officer or person issuing the disputed document," *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 678 (D.C. Cir. 1981), and the relative positions in the agency's "chain of command" occupied by the document's author and recipient. [*Arthur*] *Andersen* [*& Co. v. IRS*], 679 F.2d [254,] 258 [(D.C. Cir. 1982)]; *see also Schlefer v. United States*, 702 F.2d 233, 238 (D.C. Cir. 1983) (intra-agency memoranda from "subordinate" to "superior" more likely to be deliberative in

-8-

character than documents traveling in opposite direction); *Bristol-Myers Co. v. FTC*, 598 F.2d 18, 28 n. 20 (D.C. Cir. 1978) ("[D]etailed information about the agency's decision-making process is essential . . . to a fair determination of the agency's [deliberative process] claims.").

*Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. United States Dep't of Justice,* 823 F.2d 574, 586 (D.C. Cir. 1987).

When the record is viewed in the light of these factors, it is apparent that the summary statement is a predecisional communication in the NIH funding process. The scientific review group's charge is confined to a determination of scientific merit and computation of a priority score. The summary statement reflecting the group's thoughts and conclusions is sent to the advisory council and, after approval there, on to the NIA director. Although an important consideration in the director's funding decision, the peer group evaluation is not dispositive. At the end of the day, the director alone has the power to fund an application. The NIH met its burden of demonstrating that the summary statement is a predecisional, deliberative document.

Mr. Casad argues that, even if this is true, exemption five still does not protect the summary statement. His theory is that the statement contains the only explanation of the reasons why NIH funded the grant application and should therefore be disclosed as either an adopted opinion, Aplt. Br. at 34-40, or "part" of the agency's "final disposition," *id.* at 31. We recognize Mr. Casad's

frustration with the lack of an explanatory agency opinion.  To adopt his position, however, would require that every document relied upon by an agency in reaching a decision be subject to disclosure.  Put another way, the greater the role a document played in the predecisional process, the more likely the document would be subject to disclosure.  This argument turns exemption five on its head.

The Supreme Court has considered and rejected both aspects of Mr. Casad's proposed approach.  In *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161 (1975), the Court required express adoption of a predecisional document as a prerequisite to an agency waiver under exemption five.  *See id.* (stating that the agency must "expressly . . . adopt or incorporate [the document] by reference" in a final decision).  The Court has also refused to equate reference to a report's conclusions with adoption of its reasoning.  It is only the latter that destroys the privilege.  *See Grumman*, 421 U.S. at 184-85.  There is no indication in the record that, in funding the NIA training grant, the NIH expressly adopted the reasoning of the scientific peer group. [4]

---

[4]     In his reply brief, Mr. Casad asserts that the record would have been more complete on this issue if he had been allowed discovery in the trial court.  Reply Br. at 23.  We note, however, that Mr. Casad himself submitted a motion for summary judgment and that, in responding to defendants' motion, he did not take advantage of Fed. R Civ. P. 56(f), which permits a litigant opposing a summary judgment motion to show that he cannot "for reasons stated present by affidavit facts essential to justify the party's opposition."

Further, "[t]he Freedom of Information Act imposes no independent obligation on agencies to write opinions. It simply requires them to disclose the opinions which they do write." *Grumman,* 421 U.S. at 192. "If the public interest suffers from an agency's failure to explain, then "the remedy is for Congress to require it to do so." *Id.* The summary statement need not be disclosed as either an adopted opinion or part of a final opinion.

B.

Mr. Casad also argues that the summary statement may be predecisional in the broad context of the NIH process, but it constitutes the final decision of the scientific review group, which is itself an agency. He, like the unsuccessful plaintiff in *Grumman* , reasons that a report which is a final product of a governmental entity "must therefore be disclosable if" the entity is a separate agency. *Id.* at 188. The assumption is that "the final product" of an agency's deliberations "may never fall within Exemption 5." *Id.* at 188. This "premise is faulty" because it overlooks

> the fact that Exemption 5 does not distinguish between inter-agency and intra-agency memoranda. By including inter-agency memoranda in Exemption 5, Congress plainly intended to permit one agency possessing decisional authority to obtain written recommendations and advice from a separate agency not possessing such decisional authority without requiring that the advice be any more disclosable than similar advice received from within agency.

*Id.* at 187-88. Accordingly, the Supreme Court concluded, that it was "unnecessary to decide whether" the subordinate agency is "an agency for FOIA purposes." *Grumman*, 421 U.S. at 187-88. [5]

The entity at issue in *Grumman* was a regional board which had "some final decisional authority" to resolve matters with less than $800,000 at stake, but only investigative and advisory authority in matters involving a higher amount. *Id.* at 173. On the higher-value cases, the full board made the final decision. *Id.* at 185. The FOIA request was limited to documents generated with regard to this second class of cases. The Court viewed the regional board's power to issue orders in lower-value cases irrelevant to its decision. *Id.* at 188 & n.25.

The *Grumman* reasoning is directly applicable to Mr. Casad's argument. Although a scientific review group may have the power to terminate consideration of an application by determining it has little scientific merit, it has no power to actually fund an application. Mr. Casad seeks a summary statement describing a proposal which survived peer review and was forwarded to the advisory counsel and then on to the institute director for a funding decision. Whether or not a

---

[5] We note that the district court and the magistrate judge reached, analyzed, and rejected Mr. Casad's argument that a scientific review group is an agency subject to FOIA. We need not reach this issue.

review group can be considered an agency for FOIA purposes, its lack of funding authority brings the summary statement within the protection of exemption five. [6]

IV.

Finally, Mr. Casad seeks to appeal the district court's denial of his motion to expedite its ruling. The district court has resolved the case; this court can provide no relief for any alleged delay. When events occur that prevent the appellate court from granting any effective relief, an issue is moot. *Phelps v. Hamilton*, 122 F.3d 885, 891 (10th Cir. 1997).

Mr. Casad, however, argues that the issue falls under an exception to the mootness doctrine, citing *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam). To meet this exception to mootness, two conditions must be simultaneously satisfied: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Id.* Mr. Casad states that the expediting issue may arise repeatedly in his prospective legal practice (after he is admitted to the bar), yet evade review.

---

[6] Because we determine that exemption five applies to the summary statement, we do not reach the question of whether it is protected under exemption six, "which protects: personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

Speculation about future court cases is insufficient to meet the *Weinstein* standard. As to this issue, we dismiss Mr. Casad's appeal.

## V.

We thus hold that the requested summary statement falls within the deliberative process privilege included in FOIA exemption five. We AFFIRM the decision of the district court denying Mr. Casad's request to compel additional disclosure. We dismiss the appeal of the district court's denial of Mr. Casad's motion to expedite his action. We grant Mr. Casad's motion to file an appendix, but deny his motion to expedite the appeal and his motion for costs.