**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 14, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

FOREST GUARDIANS,

      Plaintiff-Appellant,

v.

UNITED STATES FEDERAL
EMERGENCY MANAGEMENT
AGENCY,

      Defendant-Appellee.

No. 04-2056

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CV-03-134-DJS)

---

Steven Sugarman, Santa Fe, New Mexico, for Plaintiff-Appellant.

Wendy M. Keats, Appellate Staff Civil Division, Department of Justice (Peter D. Keisler, Assistant Attorney General, and Leonard Schaitman, Appellate Staff Civil Division, Department of Justice, with her on the briefs), Washington, D.C., for Defendant-Appellee.

---

Before **KELLY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

      Plaintiff Forest Guardians brought this action under the Freedom of

Information Act (FOIA), 5 U.S.C. § 552, seeking to compel Defendant Federal

Emergency Management Agency (FEMA) to produce electronic mapping files that identify the location of structures insured under FEMA's National Flood Insurance Program (NFIP). The NFIP is a federally subsidized program that provides flood insurance to property owners located in flood plain areas with the participation of private insurance companies. See 42 U.S.C. § 4001(b)(2), (c). FEMA administers the NFIP and is responsible for, among other things, providing and updating flood maps. See id. § 4101(f), (g). The district court granted FEMA's cross-motion for summary judgment concluding that Plaintiff's FOIA request was exempt from disclosure under FOIA's Exemption 6, § 552(b)(6), which excludes "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Plaintiff appeals, arguing the district court erred in concluding Exemption 6 applied. According to Plaintiff, the substantial public interest in the information it requested from FEMA far outweighs any *de minimis* privacy interest that may exist. We have jurisdiction, 28 U.S.C. § 1291, review the district court's FOIA determination *de novo*, see Herrick v. Garvey, 298 F.3d 1184, 1190 (10th Cir. 2002), and affirm.

## I.

Plaintiff is a non-profit organization devoted to promoting environmental conservation. The organization is currently studying the loss of endangered

2

species in flood plain areas. Plaintiff posits the NFIP encourages excessive development in flood plain areas. Specifically, according to Plaintiff, "the issuance of flood insurance policies under the NFIP facilitates development that results in significant harm to New Mexico's natural resources."

Plaintiff filed a FOIA request with FEMA in January 2001 ("2001 FOIA request"). In the 2001 FOIA request, Plaintiff sought to obtain information regarding FEMA's "efforts to comply with numerous federal environment laws while allowing local communities to participate in the [NFIP]." Plaintiff requested the "[n]ames and addresses of all insurance policy-holders who obtain flood insurance via FEMA's [NFIP]." Plaintiff limited its request "to New Mexico residents who have property within the 100-year floodplains of the Rio Grande and San Juan river." FEMA partially granted Plaintiff's FOIA request. The agency explained it would not disclose policyholders' names because such a disclosure would "clearly invade the privacy of an individual" under Exemption 6. In the alternative, however, FEMA provided Plaintiff with sixteen "Geographic Information System (GIS) maps of the 27 communities that have a flood hazard designated by FEMA where the flooding source is the San Juan, Animas, or Rio Grande Rivers."[1] In describing the information contained in the GIS maps,

_____

[1] GIS is a "computer system capable of capturing, storing, analyzing, and displaying geographically referenced information; that is, data identified
(continued...)

3

FEMA specifically noted:

> On these GIS maps, FEMA has displayed Digitized Q3 Data showing the designated Special Flood Hazard Area (SFHA) and geocoded flood insurance policy data. The geocoded flood policy information shows the general location of structures relative to the floodplain and whether the structure insured was constructed before or after the community participated in the NFIP. These maps show the entire communities not just the floodplains located within them.

Thereafter, Plaintiff filed a second FOIA request with FEMA, which is the subject of this appeal, on April 23, 2002 ("2002 FOIA request"). In the 2002 FOIA request, Plaintiff sought:

> electronic GIS files . . . for the 27 communities that have a flood hazard designated by FEMA where the flooding source is the San Juan, Animas, or Rio Grande Rivers, showing all of the geocoded flood insurance policy data (with names and addresses removed) including the location of structures relative to the floodplain and whether the structure insured was constructed before or after the community participated in the NFIP. Please include the entire community, and not just the floodplains located within them. We are essentially requesting that your agency provide the electronic data equivalent to what we received in printed form from FEMA in response to our original January 29, 2001 FOIA [request].

FEMA denied Plaintiff's second request under Exemption 6. FEMA first indicated it had already provided Plaintiff the information in printed form. Second, FEMA claimed the electronic GIS files contained "personal identifying

---

[1](...continued)
according to location." United States Geological Survey, Geographic Information Systems, *available at* http://erg.usgs.gov/isb//pubs/gis_poster/. GIS can produce information in a variety of formats. "One of the most common products of GIS is maps." Id.

information" and, even with the names and addresses redacted, could be used to determine the "addresses of policyholders based on the GIS point locations with a reasonable level of confidence." In particular, disclosure of the electronic files could lead to the discovery of (1) an individual's name, address, and ownership interest in property, (2) the level of flood risk to property, and (3) the type of insurance and financing on property. Plaintiff sued FEMA after the agency denied its 2002 FOIA request, seeking to compel disclosure of the electronic GIS files.

## II.

FOIA facilitates public access to Government documents. United States Dep't of State v. Ray, 502 U.S. 164, 173 (1991). A strong presumption exists in favor of disclosure under FOIA and the Government bears the burden of justifying the withholding of any requested documents. Sheet Metal Workers Intern. Ass'n v. United States Air Force, 63 F.3d 994, 996 (10th Cir. 1995). Public access to Government information is not, however, "all-encompassing." Id. Access is permitted "only to information that sheds light upon the government's performance of its duties." Id. (internal citation omitted).

FOIA contains nine exemptions which, if applicable, preclude disclosure of certain types of information. 5 U.S.C. § 552(b). Exemption 6 prohibits the disclosure of information in "personnel and medical files and similar files the

5

disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Similar files" under Exemption 6 has a "broad, rather than a narrow, meaning" and encompasses all information that "applies to a particular individual." United States Department of State v. Washington Post Co., 456 U.S. 595, 600-02 (1982).

We apply a balancing test to determine whether disclosure would constitute a clearly unwarranted invasion of personal privacy under Exemption 6. See United States Dep't of Defense v. FLRA, 510 U.S. 487, 495 (1994). "[A] court must balance the public interest in disclosure against the [privacy] interest Congress intended the [e]xemption to protect." Id.; see also Federal Labor Relations Auth. v. United States Dep't of Defense, 984 F.2d 370, 374 (10th Cir. 1993). "If there is an important public interest in the disclosure of information and the invasion of privacy is not substantial, the private interest in protecting the disclosure must yield to the superior public interest." Alirez v. NLRB, 676 F.2d 423, 426 (10th Cir. 1982). If, however, the public interest in the information is "virtually nonexistent" or "negligible," then even a "very slight privacy interest would suffice to outweigh the relevant public interest." FLRA, 510 U.S. at 497, 500; see also Dep't of Defense, 984 F.2d at 375. "[E]ven a 'minimal' privacy interest . . . outweighs a *nonexistent* public interest." Dep't of Defense, 984 F.2d at 375 (emphasis added).

6

The "public interest" to be weighed in Exemption 6's balancing test is the extent to which disclosure would serve the "core purpose" of FOIA. See FLRA, 510 U.S. at 495. The core purpose of FOIA is, of course, to contribute to the "public understanding *of the operations or activities of the government*." Id. (emphasis in original, internal citation omitted). "[T]he purposes for which the request for information is made . . . [has] no bearing on whether information must be disclosed under FOIA." Bibles v. Oregon Nat'l Desert Ass'n, 519 U.S. 355, 356 (1997) (per curiam). Rather, the relevant inquiry is whether the requested information directly relates to and would facilitate the primary purpose of FOIA, which is to let citizens "know 'what their government is up to.'" Sheet Metal, 63 F.3d at 998 (quoting United States Dep't of Justice v. Reporters Comm., 489 U.S. 749, 773 (1989)).

The type of privacy interests Congress intended to protect under Exemption 6 "encompass[] the individual's control of information concerning his or her person." FLRA, 510 U.S. at 500 (internal citation omitted). Such private information includes, for example, an individual's name and home address. See id. at 501 n.8 (indicating individuals "have some privacy interest in their home addresses"); Sheet Metal, 63 F.3d at 997 (recognizing "a substantial privacy interest in personal identifying information, such as names and addresses"); Dep't of Defense, 984 F.2d at 374 (same). The privacy interest in an individual's home

7

address becomes even more substantial when that information "would be coupled with personal financial information." Sheet Metal, 63 F.3d at 997.

III.

In this case, the electronic GIS files are exempt from disclosure under Exemption 6. We first conclude the electronic GIS files are "similar files" under FOIA. The files reveal specific geographic point locations for NFIP insured structures. Such information, coupled with property records, can lead to, among other things, the names and addresses of individual property owners and thus "applies to [] particular individual[s]." Washington Post Co., 456 U.S. at 602; see also National Ass'n of Home Builders v. Norton, 309 F.3d 26, 33 (D.C. Cir. 2002) (noting "to the extent that square and lot information can lead to identification of individual property owners . . ., the information is at least arguably personal information that falls within the category of 'similar files.'").

As similar files, we next determine whether disclosure of the electronic GIS files would constitute a clearly unwarranted invasion of personal privacy under Exemption 6's balancing test. We hold that it would. The privacy interest at stake in this case, even if *de minimus*, outweighs the *nonexistent* public interest. The relevant public interest in the information Plaintiff requested from FEMA is "negligible, at best," FLRA, 510 U.S. at 497, because FEMA already provided Plaintiff with the information. See Campbell v. United States Civil Serv.

8

Comm'n, 539 F.2d 58, 61 (10th Cir. 1976) (explaining the requested material's availability from an alternative source is a relevant factor under Exemption 6). In its 2002 FOIA request, Plaintiff asked FEMA to produce: (1) electronic GIS files showing the twenty-seven communities that have a flood hazard where the flooding source is the San Juan, Animas, or Rio Grande Rivers; (2) geocoded flood insurance policy data; (3) the location of structures relative to the flood plains; (4) information showing whether the insured structure was constructed before or after the community participated in the NFIP; and (5) information showing the entire community and not just the flood plains located within the community. FEMA, however, provided all of this information in response to Plaintiff's 2001 FOIA request. FEMA specifically provided Plaintiff with sixteen GIS maps which showed: (1) the twenty-seven communities that have a flood hazard where the flooding source is the San Juan, Animas, or Rio Grande Rivers; (2) the designated Special Flood Hazard Area and geocoded flood insurance policy data; (3) the general location of structures relative to the flood plains; (4) whether the insured structure was constructed before or after the community participated in the NFIP; and (5) the entire community and not just the flood plains located within the community.

We see little difference between the information contained in the hard-copy GIS maps Plaintiff already possesses and the information Plaintiff seeks in the

9

electronic GIS files. Indeed, Plaintiff explicitly stated in its 2002 FOIA request that "we are essentially requesting that your agency provide electronic data *equivalent to what we received in printed form* from FEMA in response to our original January 29, 2001 FOIA [request]."[2] (emphasis added). Because the information Plaintiff now seeks is merely cumulative of the information FEMA already provided, no public interest exists in the disclosure of the electronic GIS files. Requiring FEMA to disclose the files would not, by any stretch of the imagination, facilitate Plaintiff's understanding of "what the[] government is up to." FLRA, 510 U.S. at 497. Plaintiff already knows what FEMA "is up to" by virtue of the GIS maps in its possession. See Ripskis v. HUD, 746 F.2d 1, 3-4 (D.C. Cir. 1984) (finding the public interest "uncertain" because the agency already offered "extensive information" that provided an "ample basis" for evaluating agency action).[3]

---

[2] The *only* identifiable difference between the GIS maps and the electronic GIS files is that the maps show the "general location" of structures relative to flood plains whereas the electronic files show the "specific location" of structures. As we explain below, the specific location of structures is protected information under Exemption 6.

[3] Moreover, as the district court noted, the type of information Plaintiff seeks "is information available to the public and known." Indeed, Plaintiff acknowledges that "[f]or important policy and economic reasons, the federal government has developed information systems that make it easy for the concerned public to learn whether or not *any given property* falls within a designated flood zone." (emphasis added). Plaintiff also acknowledges it currently has in its possession "data pertaining to the location of habitats for

(continued...)

10

Against the nonexistent FOIA-related public interest in disclosure of the electronic GIS files, we next weigh the relevant privacy interest at stake in this case. "Because a very slight privacy interest would suffice to outweigh the [nonexistent] public interest, we need not be exact in our quantification of the privacy interest." See FLRA, 510 U.S. at 500. Suffice it to say, some privacy interest exists in the electronic GIS files. The GIS files contain the specific geographic location of NFIP insured structures. Disclosure of the specific location of NFIP insured structures could easily lead to the discovery of an individual's name and home address because "[k]nowing the square and lot numbers of a parcel of land *is only a step* from being able to identify from state records the name of the individual property owner." National Ass'n of Home Builders, 309 F.3d at 35 (emphasis added); see also National Ass'n of Retired Federal Employees v. Horner, 879 F.2d 873, 878 (D.C. Cir. 1989) (explaining that "[w]here there is a substantial probability that disclosure will cause an interference with personal privacy, it matters not that there may be two or three links in the causal chain."). Indeed, Plaintiff concedes the information it seeks

---

[3](...continued)
threatened and endangered species, the location of flood control structures, the location of wetlands, [and] the location of cultural resources." Combining the plethora of information Plaintiff currently possesses and/or has readily available, with the GIS maps FEMA already provided, Plaintiff has an "ample basis" to evaluate FEMA's activities. Ripskis, 746 F.2d at 3-4.

11

"could be manipulated to derive the addresses of policyholders and potential policyholders." We have recognized a "privacy interest in personal identifying information, such as names and addresses," under Exemption 6. Sheet Metal, 63 F.3d at 997 (emphasis added). In the context of an individual residence, "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant. . . . In our society, individuals generally have a large measure of control over the disclosure of their own identities and whereabouts." National Ass'n of Home Builders, 309 F.3d at 35 (internal citation omitted); see also Heights Community Congress v. Veterans Admin., 732 F.2d 526, 529 (6th Cir. 1984) (explaining "there are few things which pertain to an individual in which his privacy has traditionally been more respected than his own home.") (internal citation omitted). Plaintiff's argument that such personal information is not "private" because the information is widely available to the public and easily accessible is foreclosed by Supreme Court precedent. "An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." FLRA, 510 U.S. at 500.

Moreover, disclosure of the electronic GIS files would not only reveal names and addresses, but could also reveal information regarding an individual's ownership of property, flood risks to property, an individual's decision to

12

purchase federally subsidized flood insurance through the NFIP, and the manner in which property was purchased. Disclosing such personal information *along with* the other information Plaintiff seeks, such as particular "flood insurance policy data," would constitute an invasion of personal privacy. See Sheet Metal, 63 F.3d at 997 (recognizing a "substantial privacy interest in . . . names and addresses, particularly where . . . the names and addresses would be coupled with personal financial information.") (internal citation omitted). NFIP policyholders have a privacy interest--the extent of which we need not quantify today, see FLRA, 510 U.S. at 500--in their decision to purchase federally subsidized flood insurance and other information concerning their properties. As the district court aptly noted "the disclosure of information which will essentially lead to the revelation of flood policy holder's names and addresses, coupled with their status as participants in the federally subsidized program, represents a *palpable threat* to those person's privacy." (emphasis added). See, e.g., Department of Air Force v. Rose, 425 U.S. 352, 380-81 n.19 (1976).

Furthermore, disclosure of the electronic GIS files and, the concomitant disclosure of personal information, could subject individuals to unwanted contacts or solicitation by private insurance companies. Given the commercial interests involved in the NFIP and, the large-scale participation by the private insurance industry, see 42 U.S.C. § 4001(b)(2), a palpable threat exists that disclosing

13

information that could reveal names, home addresses, and other personal insurance policy information could lead to an influx of unwanted and unsolicited mail, if not more. See FLRA, 510 U.S. at 500-01; see also Horner, 879 F.2d at 878 (noting "one need only assume that business people will not overlook an opportunity to get cheaply from the Government what otherwise comes dearly, a list of qualified prospects."). As the Supreme Court has stated, "[m]any people simply do not want to be disturbed at home," FLRA, 510 U.S. at 501, and "[w]e are reluctant to disparage the privacy of the home, which is accorded special consideration in our Constitution, laws, and traditions." Id.

## IV.

The privacy interest in the electronic GIS files, even if minimal, clearly outweighs the nonexistent public interest in the files. Disclosing the files would thus constitute a "clearly unwarranted invasion of personal privacy" under FOIA's Exemption 6. The district court's order is therefore
AFFIRMED.

04-2056, *Forest Guardians v. United States Federal Emergency Management Agency*

**HARTZ**, Circuit Judge, concurring:

I join fully in Judge Baldock's opinion. I write separately to make one observation. At oral argument Forest Guardians asserted that it might be able to evaluate FEMA's conduct better if it had the precise locations of structures, which could be obtained from the electronic GIS files but were not discernible from the maps that FEMA had provided. As an example, it noted that it might not be able to determine whether a structure near an eagle nest was the one shown on the map. But Forest Guardians also conceded at oral argument that it had not made that point in district court. Therefore, the district court clearly ruled correctly as the matter was presented to it, and Forest Guardians' additional argument is not properly before us on appeal.