[Cite as *State v. Baker*, 2024-Ohio-5990.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 23AP-278 |
| v. | : | (C.P.C. No. 17CR-6174) |
| Bryant B. Baker, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on December 23, 2024

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Paula M. Sawyers* for appellee. **Argued:** *Paula M. Sawyers.*

**On brief:** *Samuel H. Shamansky Co, L.P.A., Samuel H. Shamansky, Donald L. Regensburger*, and *Ashton C. Gaitanos* for appellant. **Argued:** *Samuel H. Shamansky.*

APPEAL from the Franklin County Court of Common Pleas

MENTEL, P.J.

{¶ 1} Defendant-appellant, Bryant B. Baker, appeals from the judgment of the Franklin County Court of Common Pleas convicting him of one count of nonsupport of dependents under R.C. 2919.21. Because the trial court plainly erred by admitting the entirety of Mr. Baker's divorce decree for the jury's consideration, its judgment of conviction will be reversed and this cause remanded for a new trial.

I. **Factual and Procedural History**

{¶ 2} On November 14, 2017, the state indicted Mr. Baker on one count of nonsupport of dependents under R.C. 2919.21, based on the allegation that he had recklessly abandoned or failed to provide support to his minor child, F.B. (Nov. 14, 2017

Indictment.)  Because Mr. Baker had allegedly failed to provide support for at least 26 weeks out of a 104-week period, he was charged with a fifth-degree felony.  *Id*.  *See also* R.C. 2919.21(G)(1) (elevating offense level from first-degree misdemeanor to a fifth-degree felony based on a prior conviction for nonsupport or a period of nonsupport totaling 26 weeks, whether consecutive or not, out of 104 consecutive weeks).  Mr. Baker entered a plea of not guilty and the matter proceeded to trial.

{¶ 3}    The state first called Brie Baker, Mr. Baker's ex-wife, to testify.  She testified that she and Mr. Baker had one child, F.B., during their marriage.  (Feb. 14, 2023 Tr. at 11-12.)  The parties divorced in February of 2015, resulting in the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, ordering Mr. Baker to pay approximately $1,100 a month in child support.  *Id*. at 12.  Ms. Baker identified the parties' divorce decree and the order when presented with a certified copy by the state.  *Id*. at 14-15.

{¶ 4}    Ms. Baker testified that "early on" she received one payment of "about half a month's payment, somewhere around $500," but "nothing since."  *Id*. at 16.  Since the divorce, she had full custody of F.B.  *Id*. at 16-17.  Ms. Baker testified about the amount of grocery, clothing, daycare, healthcare, and activity expenses she spent caring for F.B.  *Id*. at 17-19.  According to her, Mr. Baker had contributed "[z]ero" towards those expenses.  *Id*. at 20.

{¶ 5}    Ms. Baker testified that Mr. Baker had an undergraduate degree from Ohio State and obtained an MBA during their marriage.  *Id*.  At the time of their marriage, he had "a six-figure job" at Abercrombie & Fitch, which he quit to pursue his MBA.  *Id*. at 21.  Although Mr. Baker received "a couple of offers" of employment after obtaining the degree, ranging from annual salaries of $95,000 to $125,000, "he felt that those weren't up to his value" and declined them.  *Id*. at 24.  Ms. Baker testified that Mr. Baker cleaned and cooked around their condo while unemployed.  *Id*. at 22-23.  However, she did "not know of any reason" why Mr. Baker could not work or pay child support.  *Id*. at 23.

{¶ 6}    The state also called Stephen Wygle, the quality assurance manager from the Franklin County Child Support Agency, as a witness.  Mr. Wygle described the agency's process of receiving a court order for child support, tracking a party's support obligation, and the database used by the agency for tracking.  *Id*. at 30-34.  He authenticated the

agency's payment record of Mr. Baker's child support obligation, which demonstrated only a single payment received during the time period of nonsupport in question. *Id.* at 36-38. After Mr. Wygle's testimony, the state rested.

**{¶ 7}** Mr. Baker testified in his own defense. He stated that during the marriage, he and Ms. Baker "agreed" that Mr. Baker "would be the stay-at-home parent" because he was unemployed while she was earning a "[s]ignificant amount of money" after receiving several promotions. *Id.* at 43. He admitted that the domestic court had ordered him to pay child support, but he had been "unable" to due to the psychological trauma resulting from "going from being with [F.B.] every day to seeing her four times a month" after the divorce. *Id.* at 46. "I just couldn't get over it, the mental abuse and psychological abuse that -- I just could not -- I can't get past it. I can't get past it." *Id.*

**{¶ 8}** According to Mr. Baker, he had not worked for the last 13 years. *Id.* at 47. He stated that he had "pretty much nothing," lived "out of two duffel bags," and had to "beg for alms for food." *Id.* at 47. "My every day is just trying to survive." *Id.*

**{¶ 9}** When asked on cross-examination why he did not seek employment after the divorce, Mr. Baker replied: "I couldn't do anything. I just couldn't get over the fact of what happened to me and the fact that my whole life got turned upside down. It was like my soul had been ripped out." *Id.* at 50. Mr. Baker admitted that he had never sought psychological help and that he was physically able to work. *Id.* at 50-52.

**{¶ 10}** After the defense rested, the trial court addressed the admissibility of the state's two exhibits. The state agreed to the defense's request to redact the total amount owed from Exhibit B, the child support agency's pay record, which was substantially more than the amount of criminal nonsupport. *Id.* at 55.

**{¶ 11}** More controversial was Exhibit A, the divorce decree. Mr. Baker's attorney argued that only the portion of the decree ordering child support was relevant: "There are so many findings of fact that I would submit are irrelevant to the child support obligation. So I would just ask the government to parse out the portion of the decree that allocates child support, which is really the only relevant issue." *Id.* at 54.

**{¶ 12}** The state's response was that "the jury's more than capable of deciphering through this document and determining what really is relevant in terms of the child support." *Id.* at 56. In particular, the state argued against redacting "the child support

portion and the other portion that discussed him being a stay-at-home father" because Mr. Baker had "brought up" the issue in his testimony and it "was specifically addressed in the decree." *Id.*

{¶ 13} The trial court admitted the divorce decree with no redactions, stating: "I'm going to allow Exhibit A to go in in its entirety because it is the order." *Id.*

{¶ 14} After the jury began deliberating, it sent a request for copies of the divorce decree. *Id.* at 96. The trial court provided the jury with six additional copies and it resumed deliberating. *Id.* Less than two hours later, the jury sent the following question to the trial court: "Are we allowed to consider the defendant's refusal of a psych evaluation during the course of his divorce?" *Id.* at 97.

{¶ 15} The trial court asked the parties' attorneys for their input as to the "correct answer." *Id.* at 97. The state's position was that the members of the jury could "give whatever weight that they feel is appropriate to that particular issue," so its answer was "a hard yes." *Id.* at 97-98.

{¶ 16} The defense first contested the accuracy of the jury's characterization of Mr. Baker as having refused an evaluation. He noted that Mr. Baker had initially spoken to the psychologist, who refused Mr. Baker's request to "communicate with him via email," as Mr. Baker "wanted everything to be documented." *Id.* at 98. After this exchange, Mr. Baker "did not make an appointment for the initial interview or testing process." *Id.* The defense reiterated its criticism of the relevancy of the divorce decree, and stated as well that it was "not evidence" but "a judicial finding. It's a summary. It's a finding of what the [domestic relations] court gleaned from the trial." *Id.* at 99.

{¶ 17} The trial court challenged the defense's position on relevancy, stating that the defense had "made the status of [Mr. Baker's] mental health relevant by using it as a defense." *Id.* at 100. Mr. Baker's attorney responded:

> Yes. I said that the reason he's been unable to work is because of his mental health issues; and those are certainly subject to attack by the government, but not this type of collateral attack.
>
> You have to have * * * evidence. This [decree] is [the domestic relations court judge] testifying basically, and I can't cross-examine.

*Id.* at 100.

**{¶ 18}** Mr. Baker's attorney also described the divorce decree as "really a form of hearsay," and again stated that it could not be relevant "unless there was some way to tie it to his stated mental health during the time that he wasn't working." *Id.* at 100-01.

**{¶ 19}** The state responded that "the jury needs to decide what's relevant and what isn't relevant in terms of weighing all the evidence." *Id.* at 101. Mr. Baker's attorney challenged this assertion, stating that "juries don't decide what's relevant. That's the court's decision, of course." *Id.* The trial court then ruled that "because the defendant testified that when the marriage fell apart, that is when his mental crisis arose and he has been in the same mental crisis since that point in time; therefore, the information is relevant and it is already in evidence for the jury to consider." *Id.* at 102. Shortly after, the jury found Mr. Baker guilty. *Id.* at 104.

**{¶ 20}** Mr. Baker appealed and has assigned the following as error:

> [I.] The trial court erred by permitting the State, in its case-in-chief, to introduce evidence from individuals who were never called to testify at trial, nor identified as potential witnesses, nor subject to cross-examination at any time, thereby violating Appellant's rights to confrontation, due process, and a fair trial as guaranteed by the Ohio and United States Constitutions.

> [II.] The trial court erred by admitting irrelevant, unfairly prejudicial, and extrinsic hearsay evidence regarding Appellant's purported bad acts and character from individuals who would have been incompetent to provide that testimony and, in some cases, entirely prohibited from testifying at trial, thereby violating Appellant's rights to confrontation, due process, and a fair trial as guaranteed by the Ohio and United States Constitutions.

> [III.] The trial court erred by providing the jury with an incomplete and inaccurate statement of the law, thereby violating Appellant's rights to due process and a fair trial as guaranteed by the Ohio and United States Constitutions.

## II. Standard of Review

**{¶ 21}** Before turning to Mr. Baker's arguments, a preliminary discussion of the appropriate standard of review is necessary. Other than several assertions that the trial court abused its discretion when admitting the entirety of the divorce decree as evidence,

Mr. Baker's briefing is silent as to what standard of review applies in this appeal. (Brief of Appellant at 23, 24, 27.) The state argues that Mr. Baker's attorney failed to object on any basis other than relevance, and possibly hearsay, so all other grounds for error he asserts on appeal are subject only to plain error review under Crim.R. 52(B). (Brief of Appellee at 9.)

{¶ 22} An appellate court generally reviews trial court evidentiary rulings for an abuse of discretion. *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 75. A trial court abuses its discretion if its ruling is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "An unreasonable decision is one that is unsupported by a sound reasoning process; an arbitrary attitude is an attitude that is without adequate determining principle not governed by any fixed rules or standard; and unconscionable may be defined as affronting the sense of justice, decency, or reasonableness." *State v. Hill*, 10th Dist. No. 10AP-177, 2010-Ohio-6121, ¶ 34, citing *State v. Waugh*, 10th Dist. No. 07AP-619, 2008-Ohio-2289, ¶ 13.

{¶ 23} "If the defendant failed to raise an error affecting substantial rights at trial, an appellate court reviews the error under the plain error standard in Crim.R. 52(B)." *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 14. The rule states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). The defendant "bears the burden of proof to demonstrate plain error on the record" before the appellate court. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 16. To do so, the defendant must first show "a deviation from a legal rule" amounting to an error. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), quoting *State v. Hill*, 92 Ohio St.3d 191, 200 (2001). Second, the noticed error must be plain, meaning that it reveals "an 'obvious' defect in the trial proceedings." *Id.*, quoting *State v. Sanders*, 92 Ohio St.3d 245, 257 (2001). Third, the trial court's error must have affected not only the defendant's substantial rights, but "the outcome of the trial" as well. *Id.* Ultimately, the defendant must "demonstrate a reasonable *probability* that the error resulted in prejudice" in order to satisfy the Crim.R. 52(B) standard of plain error. (Emphasis sic.) *Rogers* at ¶ 22.

{¶ 24} In this appeal, Mr. Baker asserts that the trial court erred on a number of grounds by admitting the entirety of the divorce decree. He argues that the "statements

and opinions from the parties, as well as lay and expert witnesses" made during the divorce proceeding and stated within the decree, as well as the domestic court judge's findings, all amount to "testimonial hearsay within hearsay" violating not only the rule against hearsay, but his rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution and its counterpart in Article I, Section 10 of the Ohio Constitution. (Brief of Appellant at 14-16.) In addition to relevance, he argues that the domestic court judge's factual findings were not based on personal knowledge and therefore violated Evid.R. 602 concerning the competency of witnesses. *Id.* at 23. Mr. Baker also argues that the "slew of unfairly prejudicial factual findings reached by the domestic court" violated the prohibition on introducing character evidence under Evid.R. 404. *Id.* at 25. The "purported 'expert testimony' " contained in the decree was admitted without the notice and disclosure requirements in Crim.R. 16(K), he argues, and, under Evid.R. 403, any probative value of admitting the decree in its entirety was outweighed by the danger of unfair prejudice. *Id.* at 27, 32.

{¶ 25} Only a "timely objection" preserves error asserted in an evidentiary ruling, however. Evid.R. 103(A)(1). The only objection Mr. Baker's counsel raised before the jury began deliberations concerned relevancy. At that time, he argued that the decree's findings of fact were "irrelevant to the child support obligation" and asked "the government to parse out the portion of the decree that allocates child support, which is the only relevant issue." (Tr. at 54.)

{¶ 26} Mr. Baker argues that because his trial counsel made a "reference" to the divorce decree's findings of fact, the "objections regarding competency and confrontation are just as readily discerned from the record as those pertaining to relevance and hearsay." (Reply Brief at 6.) He further argues that "the presence of bad acts evidence and expert opinions" in the decree was enough to preserve those grounds for appealing its admission because they were "readily apparent from the face of that document" and "the trial court was certainly aware" of them. *Id.* at 7.

{¶ 27} Under Evid.R. 103(A)(1), an objection must state "the specific ground of objection, if the specific ground was not apparent from the context." According to Mr. Baker's arguments, however, a trial court should be aware of any possible grounds for objection to the admission of a document based on its contents, relieving parties from the

specificity required by Evid.R. 103. Mr. Baker does not explain how the trial court could be aware of any grounds for objection that his counsel did not express. The expectation that the trial court intuit every basis for objection to the admission of a 40-page document from its "face" without any guidance from trial counsel is unreasonable. (Reply Brief at 7.) The only specific reason for inadmissibility raised by his counsel before the trial court's ruling was relevancy, and no other reason was apparent from the context of the discussion on the record.

{¶ 28} Another factor Mr. Baker cannot overcome to avoid plain error review is timing. "To be timely, the objection must be raised 'at a time when such error could have been avoided or corrected by the trial court.' " *State ex rel. Holwadel v. Hamilton Cty. Bd. of Elections*, 144 Ohio St.3d 579, 2015-Ohio-5306, ¶ 50, quoting *State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus (holding that an objection made during closing argument was untimely). After the jury began its deliberations, it sent a question about the divorce decree's contents to the trial court. Only then did defense counsel argue that the "information" in the decree was both "irrelevant" and "really a form of hearsay," and that he was unable to "cross-examine" the judge who made the findings in the divorce decree. (Tr. at 100.) Although hearsay and Confrontation Clause objections were "apparent from the context" of this discussion, defense counsel raised them only after the jury had begun deliberating. Evid.R. 103(A)(1). This was untimely. *See State v. Harris,* 10th Dist. No. 21AP-678, 2023-Ohio-3994 (applying plain error to the admission of a forensic report containing hearsay statements after trial counsel only objected to witness reading an unredacted portion of report). After deliberation began, avoiding the admission of the entire divorce decree was impossible, and the corrective effect of any jury instruction (which defense counsel did not ask for) is doubtful. For these reasons, plain error review applies to all of Mr. Baker's arguments asserting error in the admission of the divorce decree, with the exception of the argument based on relevancy.

## III. Analysis

{¶ 29} An examination of the admissibility of the divorce decree must begin with the issue of its relevancy to prove the case against Mr. Baker, as well as the affirmative defense he asserted. The definition of relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence." Evid.R. 401. The trial court has the responsibility to determine the relevancy of evidence. Evid.R. 104; *State v. Getsy*, 84 Ohio St.3d 180, 201 (1998) (holding that admission of irrelevant evidence in penalty phase of aggravated murder case did not prejudice defendant, although trial court incorrectly instructed jury to consider evidence "which you deem to be relevant" from trial phase); *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶ 110 (quoting *Getsy*, stating that "it is 'the trial court's responsibility, not the jury's, to determine what evidence [is] relevant' ").

{¶ 30} Mr. Baker was indicted on one fifth-degree felony count of nonsupport of a dependent under R.C. 2919.21. At trial, the state was required to prove that Mr. Baker recklessly committed the offense as defined under R.C. 2919.21(B). *See State v. Collins*, 89 Ohio St.3d 524 (2000) (holding that the applicable degree of mental culpability to prove nonsupport of a dependent under R.C. 2919.21 is recklessness). The statute states:

> (1) No person shall abandon, or fail to provide support as established by a court order to, another person whom, by court order or decree, the person:
>
> (a) Is legally obligated to support * * *.

R.C. 2919.21(B).

{¶ 31} In addition, to secure a conviction at the fifth-degree felony level charged in the indictment, the state was required to prove that Mr. Baker "failed to provide support * * * for a total accumulated period of twenty-six weeks out of one hundred four consecutive weeks, whether or not the twenty-six weeks were consecutive." R.C. 2919.21(G)(1).

{¶ 32} Mr. Baker invoked the affirmative defense that he "was unable to provide adequate support or the established support but did provide the support that was within the accused's ability and means." R.C. 2919.21(D). To prevail, he was required to prove the affirmative defense by a preponderance of the evidence. R.C. 2901.05(A).

{¶ 33} Mr. Baker's attorney conceded to the jury, both in his opening statement and his closing argument, that the state's evidence proved the offense. (Tr. at 8, 68.) On appeal, Mr. Baker repeats that he "did not, and does not, claim that the evidence presented by the State was in any way deficient." (Brief of Appellant at 20.) Rather, "the only disputed issue" was whether he could prove the affirmative defense as defined under R.C. 2919.21(D). *Id.*

At trial, Mr. Baker's testimony was the only evidence he introduced to prove the defense by a preponderance of the evidence.

{¶ 34} Mr. Baker's attorney agreed to the admissibility of "the portion of the [divorce] decree that allocates child support," a three-page section stating the amount of child support and the actual order to pay, but argued that the rest was "wholly irrelevant." (Tr. at 54.) In response, the state first argued for admission of the divorce decree in its entirety, claiming that "the jury's more than capable of deciphering through this document and determining what really is relevant in terms of the child support." *Id.* at 56. In the event the trial court decided to not admit the entire document, the state asked for admission of the "discussion" in the divorce decree "regarding whether or not Mr. Baker was a stay-at-home parent by agreement" because it was "brought up by the defense" during his testimony. *Id.*

{¶ 35} Here, no party disputes the relevancy of the domestic court's child support order, as stated on pages 35-37 of the divorce decree, to prove that Mr. Baker was "legally obligated to support" F.B. "by a court order or decree." R.C. 2919.21(B). *State v. Nelms*, 10th Dist. No. 81AP-339, 1981 Ohio App. LEXIS 10222, *3-5 (Oct. 6, 1981) (holding that the state may use "a court order or decree arising out of a civil action to establish that [defendant] is a person whom by court order defendant is legally obligated to support" under former R.C. 2919.21(A)(4), now R.C. 2919.21(B)).[1] Furthermore, as the state notes, that portion of the divorce decree "was relevant to prove the date the child support order went into effect" in order to prove that 26 weeks of nonpayment had elapsed, as required by R.C. 2919.21(G)(1). (Brief of Appellee at 14.)

{¶ 36} Mr. Baker's alleged tenure as a stay-at-home father during the marriage would have occurred before the divorce and the period of nonsupport charged in the indictment, and therefore had no bearing on the elements of nonsupport of a dependent under R.C. 2919.21(B) or his affirmative defense. Because it was not a fact that was of consequence to the action, his testimony on this point was irrelevant, and also inadmissible. Evid.R. 104; Evid. R. 402. ("Evidence which is not relevant is not admissible.").

{¶ 37} However, Mr. Baker opened the door to the admission of evidence on this issue. "The evidentiary concept of 'opening the door' embodies the concepts of waiver and

---

[1] 1995 Ohio S.B. 269, enacted on June 27, 1996, renumbered R.C. 2919.21(A)(4) as R.C. 2919.21(B).

fairness. If one party offers evidence that is otherwise inadmissible as being irrelevant under the rules of evidence, the courts will consider that a waiver of the rules and in fairness allow the opposing party to present testimony or evidence on the same point." *State v. Dunbar*, 8th Dist. No. 89896, 2008-Ohio-2033, ¶ 31. Furthermore, Mr. Baker asserted not only that he had been the stay-at-home father, but also that he and his ex-wife had "agreed" that he would be. (Tr. at 43.) The divorce decree stated that Ms. Baker "adamantly disputes that [Mr. Baker] and she *agreed* that he would be the stay-at-home parent," directly contradicting Mr. Baker's assertion of unanimity. (Emphasis sic.) (Ex. A at 28.) After a party has opened the door, the opposing party "may introduce evidence on the same issue in order to rebut any false impression that may have resulted from the earlier admission." *State v. DeLeon*, 2d Dist. No. 18114, 2001 Ohio App. LEXIS 2353, *23 (May 25, 2001), citing *United States v. Segines*, 17 F.3d 847, 856 (6th Cir.1994). Once Mr. Baker testified that he had been the stay-at-home parent and asserted that his ex-wife agreed to this, he forfeited any argument that other evidence addressing those points were inadmissible based on relevancy.[2]

{¶ 38} The trial court did not analyze any part of the divorce decree for relevancy before admitting it in its entirety for the jury to review. After asking the parties' positions, it stated only: "I'm going to allow Exhibit A to go in in its entirety because it is the order." (Tr. at 56.) No sound reasoning supported this ruling. To characterize the divorce decree in its entirety as "the order" is a factual error. Only three pages of Exhibit A was the child support order. To admit the remaining 37 pages of the divorce decree with no examination of any of its contents for relevancy, was an arbitrary ruling by the trial court. Consequently, it was an abuse of discretion.

{¶ 39} The only other time relevancy arose was the discussion of Mr. Baker's communication with the psychologist that prompted the jury to send its question asking if it could consider his "refusal of a psych evaluation" during the divorce. *Id.* at 97. Mr.

---

[2] The state did not address Mr. Baker's assertions about being the stay-at-home parent when cross-examining Mr. Baker, nor did it call back his ex-wife to rebut this portion of his testimony. Thus, the state did not perceive his testimony about being a stay-at-home father as consequential enough to merit openly contesting the issue in front of the jury, in spite of its insistence that the divorce decree be admitted because he had "opened the door" on this issue. Furthermore, the portion of the divorce decree addressing the point actually bolstered Mr. Baker's assertion: "Whether or not the parties actually agreed, this Court cannot and has not ignored the fact that [Mr. Baker] *was* the parent to stay home with the parties' child." (Emphasis sic.) (Ex. A at 28.)

Baker's affirmative defense almost entirely depended upon his assertion of a mental state so incapacitating that he "was unable to provide adequate support or the established support but did provide the support that was within the accused's ability and means," as required by R.C. 2919.21(D).  Because of his affirmative defense, evidence of his mental state was "of consequence to the determination of the action" because of his affirmative defense.  Evid.R. 401.  Thus, irrelevancy alone could not have served as the basis for the inadmissibility of the part of the decree the jury inquired about.

{¶ 40} Mr. Baker's other arguments stand on surer ground.  Noting that in the divorce decree, the domestic court judge "relies upon statements and opinions from parties, as well as lay and expert witnesses," Mr. Baker describes those statements as "testimonial hearsay within hearsay." (Brief of Appellant at 16.)

{¶ 41} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement."  Evid.R. 801(C).  A statement includes a "written assertion." Evid.R. 801(A).  Unless a recognized exception applies, hearsay is inadmissible.  Evid.R. 802. To admit hearsay within hearsay, an exception to the hearsay rule must apply to each statement.  *See* Evid.R. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule.").

{¶ 42} The examples of hearsay within hearsay in the 41-page divorce decree are too numerous to catalog.  A sample must suffice.  In the decree, the domestic court judge summarizes the testimony of every witness during Mr. and Ms. Baker's divorce trial. Ms. Baker's previous supervisor testified, and "confirmed that [Ms. Baker] was a manager in training here in Columbus and her position was terminated," and that she "was an excellent long term employee * * *." (Ex. A at 15.)  F.B.'s guardian ad litem "stated concerns about the state of [Mr. Baker's] mental health and possible harm" to F.B.  *Id.* at 16.  An expert witness who testified about Mr. Baker's earning ability stated that he "should be able to find employment in the Columbus Ohio area in the next six months earning $71,000," and he "did not cooperate fully with the evaluation."  *Id.* at 20.  The hearsay within hearsay rule applies to each of these statements, and many others in the divorce decree.

{¶ 43} The state argues that the divorce decree was admissible under Evid.R. 803(8), the public records exception to the hearsay rule. (Brief of Appellee at 12.) Evidence Rule 803 states a number of exceptions that "are not excluded by the hearsay rule, even though the declarant is available as a witness." The rule includes the following exception for public records and reports: "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report * * *." Evid.R. 803(8). Ohio courts have applied the Evid.R. 803(8) public records exception to the hearsay rule when considering the admissibility of court records.[3] *E.g.*, *In re M.H.*, 10th Dist. No. 17AP-466, 2018-Ohio-2413, ¶ 34 (holding that a "request for [probation] revocation was a certified court record and therefore was a 'public record' within the meaning of Evid.R. 803(8)").

{¶ 44} Even so, "[w]itness statements in a public record typically constitute hearsay within hearsay" and "are not automatically admissible by virtue of their inclusion in an official record." *State v. Mohn*, 12th Dist. No. CA2008-06-073, 2009-Ohio-437, ¶ 26. The Supreme Court of Ohio has stated that the public records exception "allows the admission of official records, although these records may constitute hearsay, in so far as they consist of facts recorded by public officials who are not present as witnesses. However, the [exception] does not render admissible statements contained in official reports, where such statements are themselves hearsay." *Westinghouse Elec. Corp. v. Dolly Madison Leasing & Furniture Corp.*, 42 Ohio St.2d 122, 130 (1975) (interpreting R.C. 2317.42, the statutory predecessor to Evid.R. 803(8)). Thus, a document's status as a public record does not automatically allow the admission of every hearsay statement it contains. Such statements are subject to the double hearsay requirement of Evid.R. 805 and must be admissible under an exception other than the Evid.R. 803(8) exception that applies to the public record itself. *See State v. Lowry*, 10th Dist. No. 89AP-108, 1989 Ohio App. LEXIS 3417, *5 (Aug. 31,

---

[3] In contrast, when construing the federal rule, several United States Circuit Courts of Appeal have held that "the public records exception of Rule 803(8) does not apply to judicial findings of fact in a prior, unrelated case." *Herrick v. Garvey*, 298 F.3d 1184, 1192 (10th Cir.2002). *See also Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir.1993) (holding that "judicial findings of fact are not public records within the meaning of" Fed.R.Evid. 803(8); *United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir.1994) (holding that "the findings of fact and references to testimony in [previous civil case] order were not admissible evidence and should not have been considered by the district court" under Fed.R.Evid. 803(8)).

1989) (applying *Westinghouse* to police report and holding that witness statement "represents hearsay within hearsay which is only admissible if the second level hearsay itself falls within a specific exception" apart from public records exception under Evid.R. 803(8); *State v. Houston*, 10th Dist. No. 04AP-875, 2005-Ohio-4249, ¶ 31, *reversed and remanded on other grounds* (sentencing), as explained in *State v. Houston*, 10th Dist. No. 06AP-662, 2007-Ohio-423, ¶ 2 (applying *Westinghouse* and *Lowry* to affirm exclusion of police videotape because "statements are not admissible simply because they are contained within an official report; to be admissible, [such] statements must also fall within a hearsay exception"). The state has not explained how any testimonial statement within the divorce decree is independently admissible. Nor has it argued that any hearsay exception other than the public records exception applies. We cannot identify an exception that applies to any of the numerous testimonial statements in the divorce decree and therefore conclude that the trial court erred by admitting them.

{¶ 45} Mr. Baker argues that "a slew of prejudicial factual findings reached by the domestic court" resulted from the trial court's decision to admit the divorce decree in its entirety, violating the prohibition on the admission of "any other crime, wrong or act" under Evid.R. 404(B)(1). (Brief of Appellant at 25.) He cites to the following factual findings from the divorce decree:

> (1) its concern that Appellant would obstruct efforts to sell the marital estate; (2) its reference to his failure to pay Guardian ad Litem fees; (3) a discussion of his purported paranoia and negativity; (4) its concerns about his emotional health (which went "above and beyond most similarly situated litigants"); (5) an accusation that he had hindered the domestic court's fact-finding efforts; (6) a reference to his failure to complete a parenting class; (7) a reference to his failure to obtain employment despite a court order; (8) a finding that he had not claimed an inability to work due to a mental or emotional condition at that time; (9) a reference to his failure to cooperate in the discovery process; and (10) a reference to his failure to undergo a psychological evaluation during the domestic case.

*Id.*

{¶ 46} "Evidence of any other crime, wrong or act is not admissible to prove the person's character in order to show that on a particular occasion the person acted in accordance with the character." Evid.R. 404(B)(1). "This type of evidence is commonly

referred to as 'propensity evidence' because its purpose is to demonstrate that the accused has a propensity or proclivity to commit the crime in question." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, ¶ 21.  Although an appellate court "typically review de novo whether evidence is offered for a permissible, nonpropensity purpose under Evid.R. 404(B)," the failure to raise the objection in the trial court makes "a plain error standard of review appropriate." *State v. Corrado*, 1st Dist. No. C-230635, 2024-Ohio-2575, ¶ 9.

{¶ 47}  In *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 19, the Supreme Court of Ohio instructed courts to "conduct a three-step analysis" to determine whether other acts evidence is admissible under 404(B).  "The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Williams* at ¶ 20, citing Evid.R. 401.  We have already discussed the minimal relevancy of the majority of the divorce decree to either the state's case against Mr. Baker or his affirmative defense.  Other than the support order and the portions of the decree Mr. Baker opened the door to concerning his mental state and his conflict with the psychologist over an evaluation, the other acts evidence he lists fails the relevancy prong of the test.

{¶ 48}  "The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B)." *Id*.  Those purposes include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Evid.R. 404(B)(2).  We find that the other acts evidence serves none of these purposes.  Furthermore, the state not only presents no argument to justify the admission of the other acts evidence in the divorce decree, but fails to address Mr. Baker's argument under Evid.R. 404 at all.

{¶ 49}  "The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Williams* at ¶ 20, citing Evid.R 403.  Under Evid.R. 403(A), even relevant "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 50} The divorce decree is replete with language that presented a danger of unfair prejudice. Its statements illustrate the domestic court's frustration with Mr. Baker as a litigant due to difficult behavior he exhibited during the divorce proceeding. For example, he "did not pay any of [the guardian ad litem fees] despite being Court ordered to do so." (Ex. A at 7.) In addition, the domestic court repeatedly criticized his credibility, often in contrast to his ex-wife, while crediting her description of his mental state. Ms. Baker "testified credibly" that Mr. Baker "began acting peculiar and paranoid when she asked him for a divorce. Her concern has escalated during the course of this litigation and she now expresses concerns about whether or not it is in [F.B.'s] best interest to be with her father for extended periods of time." *Id.* at 7-8. Ms. Baker sought "to provide [F.B.] a positive balance to counterbalance [Mr. Baker's] paranoia and negativity." *Id.* at 8. Ms. Baker "believes that [Mr. Baker] has demonstrated throughout this litigation that he is not emotionally healthy." *Id.* at 10.

{¶ 51} The domestic court judge also made its own assessments of Mr. Baker's mental state. "In fact, to this trier of fact, the Defendant has demonstrated behaviors during the course of this litigation which give cause to question the state of his current mental health." *Id.* The guardian ad litem's report stated that Mr. Baker had "maintained a pervasive pattern of paranoia and suspicion throughout this case." *Id.* Mr. Baker "refused to cooperate and sabotaged information which the legislature requires the court to consider when making a decision as [to] the best interest of this minor child." *Id.* at 11. Because of Mr. Baker's "consistent pattern of behaviors that give rise to question his mental health," the domestic court found "that without a complete psychological examination to confirm the state of [his] mental health the Court is hindered in its ability to determine if [F.B.] will be emotionally and physically safe in [his] extended care." *Id.* at 11.

{¶ 52} In addition, the domestic court expressed repeated frustration with Mr. Baker, who appeared difficult and intransigent with everyone involved in the divorce case. His "suspicion and distrust of the Court system as a whole quickly spilled over to his interactions with the Guardian ad Litem," whose billing he questioned. *Id.* at 16. Mr. Baker did not complete a parenting class and had failed "to comply with other court orders" as well. *Id.* at 18. The domestic court found that Mr. Baker was "voluntarily unemployed." *Id.* at 20. The domestic court stated "this Court *cannot* ignore the fact that [Mr. Baker] has

made *little to no efforts* to become employed during the time period that he was awarded spousal support and afforded housing." (Emphasis sic.) *Id.* at 28. Mr. Baker "failed to cooperate in the discovery process." *Id.* at 30.

{¶ 53} The foregoing statements would have been unfairly prejudicial regardless of their source, but they represent the fact-finding of a judge. This intensifies the prejudicial effect of the divorce decree's statements, and their cumulative effect is far in excess of what Evid.R. 403 can tolerate. "Juries are likely to give disproportionate weight to such findings of fact because of the imprimatur that has been stamped upon them by the judicial system." *Herrick v. Garvey*, 298 F.3d 1184, 1192 (10th Cir.2002). Thus, "judicial findings of fact 'present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.' " *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir.1993), quoting *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F.Supp. 1125, 1186 (E.D.Pa.1980). Mr. Baker had the right to have the merits of his affirmative defense assessed by the jury based on his testimony and the state's evidence, without the intrusion of statements by a judge from another case attacking his credibility, character, and mental state. In addition, the domestic court judge's unfavorably compared Mr. Baker's credibility to that of his ex-wife, inviting the jury to substitute its own credibility assessment with those made in the divorce decree. Furthermore, the note that the jury sent out inquiring about a portion of the decree shows that it did, in fact affect their deliberations. For these reasons, there was a substantial probability that the admission of the divorce decree affected the outcome of the trial. The admission of the divorce decree in its entirety interfered with his substantial right to have the jury consider the evidence presented in his case without prejudicial influence. *See State v. Fuchs*, 2d Dist. No. 27873, 2019-Ohio-4294, ¶ 17 (holding that defendant's trial counsel was ineffective for failing to object under Evid.R. 403 to the admission of a "magistrate's findings of fact [that] presented the jury with potentially inflammatory descriptions of [defendant's] past behavior" and "posed a significant risk of causing [him] unfair prejudice").

{¶ 54} The state argues that the findings in the divorce decree were "merely duplicative" of the testimony presented at Mr. Baker's criminal trial, where the evidence of Mr. Baker's guilt "was so overwhelming" that any error was harmless, as "he did not suffer

any prejudice pursuant to Evid.R. 403(A)." (Brief of Appellee at 21, 24.) "The same concerns about a jury's ability to refrain from placing great weight on a judge's findings apply equally in determining whether the error was harmless." *Nipper* at 418. The error was not harmless. The admission of the divorce decree invited the jury to abdicate its fact-finding responsibility to a prior evaluator of the facts about Mr. Baker. The first two assignments of error are sustained due to plain error in the admission of double hearsay that unfairly prejudiced Mr. Baker under Evid.R. 403 with evidence of prior bad acts under Evid.R. 404. Accordingly, he is entitled to a new trial after remand. *State v. Thompson*, 11th Dist. No. 2018-P-0099, 2020-Ohio-67 (remanding for a new trial after defendant showed plain error in the admission of unfairly prejudicial testimony under Evid.R. 403).

{¶ 55} Because Mr. Baker's "nonconstitutional arguments are dispositive," we decline to address his arguments alleging violations of his Confrontation Clause and Due Process rights. *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, ¶ 9. "Under the constitutional avoidance doctrine, a court 'will not reach constitutional issues unless absolutely necessary.' " *Columbus v. Coleman*, 10th Dist. No. 22AP-79, 2022-Ohio-4478, ¶ 10, quoting *Talty* at ¶ 9. The doctrine of constitutional avoidance counsels against reaching those arguments after concluding that the admission of hearsay amounts to prejudice requiring reversal. *E.g.*, *United States v. Gomez*, 617 F.3d 88, 97 (2d Cir.2010) (declining reach the "overlapping claim" that admission of hearsay violated appellant's Confrontation Clause rights "only because the doctrine of constitutional avoidance counsels against it once the evidentiary error is established"); *United States v. Doswell*, 670 F.3d 526, 529 (4th Cir.2012) (applying doctrine of constitutional avoidance after concluding that district court erred by "failing adequately to assess the hearsay evidence" at hearing on revocation of supervised release); *State v. McGill*, Crim.App. No. M2022-00501-CCA-R3-CD, 2023 Tenn. Crim. App. LEXIS 64, *18 (Feb. 16, 2023) (vacating conviction and remanding for new trial after trial court erroneously allowed hearsay testimony that proved element of offense, but declining to address Confrontation Clause arguments because of constitutional avoidance).

**IV. Conclusion**

{¶ 56} Having sustained the first two assignments of error, we overrule Mr. Baker's third assignment of error as moot. The judgment of the Franklin County Court of Common Pleas is reversed and this cause is remanded for a new trial.

*Judgment reversed*; *cause remanded.*

BEATTY BLUNT and JAMISON, JJ., concur.

_____